Good morning, everyone. Our first case today is Kearney v. Unsecured Creditors Committee, et al., number 19-2209. Counsel, you may proceed. Good morning, Your Honors. May it please the Court. At its core, this appeal is about protecting the reasonable expectations of debtors based on unambiguous provisions of the Bankruptcy Code. And the question that this Court must answer in this appeal is whether bankruptcy and the bankruptcy statutory scheme which allows creditors to propose a Chapter 11 plan is a loophole around Spendthrift Trust and Section 541c2 of the Code that creditors have long been seeking. The lower court said that there is a loophole, and the appellees argue that there is a loophole. But notably, and I will get to this momentarily, the lower courts and the appellees don't even agree on what the loophole is. My client, Victor P. Kearney, is the sole income beneficiary of two Spendthrift Trusts in New Mexico. Regardless of anyone's personal opinions on whether Spendthrift Trusts are good or a bad idea, they have been around since the 1800s, and they are enforceable in bankruptcy. Section 541c2 of the Bankruptcy Code clearly provides that a debtor's interest in a Spendthrift Trust is protected and not property of the estate, which means that creditors cannot attach or anticipate Spendthrift Trust distributions. So, when Mr. Kearney filed for relief under Chapter 11, he had a very reasonable expectation to believe that he'd have a fair ordering at the insistence of creditors, the liquidation of those Spendthrift Trusts, and use of the proceeds from the liquidation. Yet, that is precisely... Counsel, what do we do with the District Court of New Mexico, the state court, that court's actions with respect to this trust? Well, Your Honor... We have jurisdiction over that, do we? We can't review the District Court of the That is correct, but we are not asking you to review what the District Court did. What we are asking you to do is determine whether the state court's order even constituted a modification, and it does not. The Bankruptcy Court and the lower court, their ruling is based on a finding or conclusion that the state court modified the Spendthrift Trust. Now, when you look at the modification, and it is that, one, that the Trusts were modified to permit the one-time distribution of $3 million of principal to Mr. Kearney, and then the Trusts are hereby modified to add a provision applicable to Trust B and C, which states as follows. The Trusts are authorized on a one-time basis to distribute $3 million of principal to Kearney if the UCC plan is confirmed by a final order of the Bankruptcy Court. And so, there is no modification of the Spendthrift Trust, Your Honor. As we sit here today... Counsel, Counsel, is your argument then that the state court should have said explicitly that the Spendthrift Trust provision does not prohibit the $3 million payment? Well, Your Honor, they're just authorizing a discretionary distribution. When you look at the provisions that... Well, no, but my question is, are you saying that the District Court didn't say explicitly that it was making this exception, or that it was revising the Spendthrift provision in the Trust? Absolutely, Your Honor, and in fact... But wasn't that the practical effect of what the state court did? I disagree, because if you look at what the Trustees asked the state court to do, they asked the state court, they said to the state court, and if you look at the transcript, those 50 pages that constitute their entire argument, is that, Your Honor, if you authorize a $3 million distribution to Mr. Kearney, Section 1115 of the Bankruptcy Code will allow that distribution to become property of the estate. That's what they asked. Now, under New Mexico trust law, to actually modify the Spendthrift Trust, they would have had to put on a very different case, because under Section 46A411 and 46A412, a modification of the Spendthrift provision would have required clear and convincing evidence that Kearney's deceased wife did not anticipate that Kearney would have run into financial difficulties, and that getting rid of the Spendthrift provision would further the purposes of the trust and be in accordance with her intentions. That's not what they proposed. Didn't the state court specifically make findings by clear and convincing evidence that it was in the best interest and that the trustor would have agreed with that, because of Kearney's spending all the money and not paying creditors? To make a $3 million distribution and to have the trustees sell the stock, the court's findings are really premised on strife between the trustees and the debtor. Now, that modification, if there's strife between the trustee and the debtor, the appropriate modification there would be a new successor trustee, but it's not to allow Mr. Kearney to pay creditors. That is not- Did the client, in effect, interfere with a new trustee by filing, or I can't remember, that's not when he filed for bankruptcy, but he filed something, a state court action. He filed for bankruptcy, Your Honor, because he had significant debt and he sought to take care of his financial affairs through a bankruptcy. I would disagree that he tried to interfere with the appointment of successor trustee, and in fact, he has been trying to get a successor trustee appointed. So, Your Honors, I just want to talk about Section 1115. So, first of all, the state court order does not say that a dispenser provision is modified, and the trustees, that's not even their argument. Their argument is Section 1115. When you look at Section 1115, there is no indication that Congress intended to overrule 541C2. That's what their argument is, that 1115 overrides 541C2. Counsel, it still seems- I'm kind of back to where Judge Kelly got us started in this discussion, which is, it seems like your argument about what the state district court did or didn't do is calling on this court to review what the state district court did. Aren't those arguments more appropriately presented to your state court appeal? I disagree, Your Honor, because under 1129A3, the bankruptcy court is still required to make a federal- you know, it's a federal statute. He is required to make findings on whether the plan complies with 1129A3. That is, that it's in good faith and not proposed by means forbidden by law. Bankruptcy courts every day review, you know, state law, and so the state law here that we're talking about is whether there is a valid and enforceable dispenser provision. Nothing about the state court's order precludes the bankruptcy court from actually making that finding, and in fact, if you look at the state court's order, it's actually conditional. It punted it right back to the bankruptcy court and said, if you approve this, then I will allow a $3 million distribution, and so I don't think there's anything improper by the bankruptcy court actually complying with its obligation to interpret federal law here, 541C2, to determine whether there is a valid and enforceable dispenser provision and whether the plan to circumvent that is in violation of 1129A3. The bankruptcy court did not do that and instead rested on this conditional order by the state court. So, your honors, what the appellees are actually asking this court is to find that there is a loophole based on the state court order that doesn't order a modification of the trust, and that this allows them to loophole around dispenser provision and 541C2. And with your permission, I'd like to leave the remainder of my time. Counsel, I need to ask you one other question on another issue, which has to do with the settlement of claims part of your appeal. You identify four claims in your brief and argue that I think three of them are not part of the estate. Have I got that right so far? Yes, that's correct. All right. Didn't Mr. Kearney tell the bankruptcy court in the rule 2004 proceedings that these claims were part of the estate? Not exactly. He said he'd be willing to contribute if these claims went forward and he actually recovered on the claims, he would be willing to contribute some of the proceeds from that litigation to pay off his creditors. And in fact, in that 2004 proceeding, the bankruptcy court actually held that those claims were not property of the estate and for that reason denied the 2004 examination that was requested. And yet it then confirmed a plan that settled these claims that it claims it did not have jurisdiction over and were not property of the estate. And just quickly, would you agree that we're only talking about these four claims or really the three claims? You're not making an argument about any other claims? Those are the principal claims, your honor. Thank you. And so I'd like to leave the remainder of my time for a moment. Thank you, counsel. Mr. Fish, are we hearing from you next? Yes, your honor. I would please the court. I'm Paul Fish. I represent Lewis and Benjamin Abruzzo as trustees. Mr. Walker, who represents the UCC, and I've agreed we'll split the time equally and I'll try to abide by that. I will be addressing the 1129A3 issues raised by Mr. Kearney, which are what counsel talked about in her presentation. And Mr. Walker will address the other point, the approval of the settlement. 1129A3 of the bankruptcy code says to confirm a plan of reorganization, the court must find the plan was proposed in good faith, not by any means forbidden by law. There are two tests and good faith is a matter on which the appellate court is to give deference to the bankruptcy court. The standard is clear error. But I think I'd like to move into 1129A3 since that seems to be the main issue presented. The plan that was proposed by the UCC very carefully separates the roles of the bankruptcy court into deciding bankruptcy issues and the state court deciding state law trust issues. The state court did not rule on whether the UCC plan met the requirements of the bankruptcy code, nor should it have. That's for the bankruptcy court. But the state court had the trusts and all beneficiaries before it. The state court judge was very familiar with this trust and the parties, and it had exclusive jurisdiction over the trusts. And despite the rhetoric about this being a brazen scheme, the UCC acted in good faith in respecting the state court in determining whether the trustees would breach their I'd like to get into the argument that the state court judge did not adequately modify the trusts. That's basically the issue. He didn't do a good enough job. There are at least three conclusions of law. If you look at the court's findings, which obviously your honors are familiar with, 24 Act 265, we've got, first of all, find a conclusion of law 11 that says the trusts are modified to permit the one-time distribution of $3 million of principal to Mr. Carney as contemplated by the UCC plan. As contemplated by the UCC plan. And so the state court judge knew that the plan provided the $3 million goes to Mr. Carney, and then under 1115, it goes into the pool for the creditors. And he specifically said, it's modified for that purpose. Finding 13 says, or I'm sorry, it's not finding, it's conclusion of law 13. The trustees distribution of $3 million from trust principal to be paid to Mr. Carney, and then immediately over to the UCC is in keeping with the trustee's powers and duties, and is not a breach of saying. So when the state court judge is saying that the distribution of the money to the, into the Mr. Carney, and then over to the creditors is not a breach of the trustee's powers and duties, he's obviously interpreting the Spendthrift provision. He's interpreting the modification he is imposing, and he is finding that that distribution does not violate the Spendthrift laws. By clear and convincing evidence, he determined this was in the best interest of all parties. State law allows a modification of the trusts for the purposes set out in the statute, and for the purposes set out by the state court decision. Then of course, there's paragraph 15 of the conclusions, a modifying to add a provision for the distribution of the $3 million. The provision that if the UCC plan is confirmed by the bankruptcy court, I think is an indication of two things. First of all, the state court was not attempting to rule on bankruptcy law, was not attempting to confirm the plan, he shouldn't. And secondly, it's a recognition that the $3 million would be distributed in accordance with the terms of the plan, and the plan provided that money goes from Mr. Carney into the creditors. If the bankruptcy court attempted to say, oh, well, that modification isn't good enough, it would be first of all, infringing on the exclusive jurisdiction of the state court, it would be violating the reverse state court decisions, and it would be improper. The bankruptcy court did comply with the In re Harbin decision out of the Ninth Circuit, which said that if there's a provision, if there's a state court decision that's on appeal, the bankruptcy court should look at it to see if the state court was likely to be reversed on appeal. That's not Tenth Circuit law, but Judge Thuma followed it anyway, and he found that the state court's decisions, these findings and conclusions were well-based in fact, in law, were likely to be affirmed on appeal. I think, Your Honors, the questions all three of you asked make it pretty clear that you those points. It just simply is a question of whether the state court judge did a good enough job seems to be the argument, and he did a fine job, and he clearly indicated and found that the plan should be confirmed. I just ask you to clarify one thing for me. Yes, sir. In your brief on page 19, it says the following, only once the funds are distributed to Mr. Kearney that they become property of the estate. So, how is the three million part of the estate when it hasn't been distributed to him? Under section 1115 of the bankruptcy code, it says that, let me back up, 541 of the bankruptcy code says that property of the estate is the property, all rights of the debtor on the day he files bankruptcy. It's time limited. 1115 extends the time and says that if property of the kind specified in 541, and 541 is all property, cash is certainly the kind of property specified in 541. If that comes into the hands of the debtor during the chapter 11, then that property becomes property of the bankruptcy estate. So, when the $3 million hits Mr. Kearney's hands during the chapter 11, that $3 million becomes property of the bankruptcy estate, is under the bankruptcy jurisdiction, and therefore, it can be used for the plan. Actually, the debtor said in the brief in chief, the debtor said it very well. On page 16 of the debtor's brief in chief, it says, if that $3 million distribution is made to Kearney when the plan becomes effective, then under bankruptcy code section 1115, the $3 million becomes property of the estate. So, the key here is that the money hits Mr. Kearney's hands. It's not exempt. It's not once cash is distributed from the Spendthrift Trust and becomes property of the debtor. That money is free and clear of any protection from the Spendthrift Trust, and under 1115, it becomes property of the estate. I hope that answers your question. Thank you. The 1115 argument was a new argument. The other new argument was that somehow money from the trust is like exempt property. It is not exempt property. It's not like exempt property in any way. It's simply that a creditor can't go and stop the money from hitting the debtor's hands. That's what a Spendthrift Trust provision does, that you can't go to the trust. You can't attack the trustees. It's limited. Your Honor, I have exceeded my seven and a half minutes. I'll turn the podium over. It always happens. Thank you, Mr. Fish. May it please the Court, I'm Thomas Walker for Appellee Unsecured Creditors Committee. I'll just quickly add something to what's been discussed already. It is common for funds that make a plan effective to not come into being until the debtor borrows money, for example, to fund his plan. When a debtor issues new securities in order to fund his plan, those things don't come into being until after the plan is confirmed and on the effective date. No one is going to subscribe to new stock if there's not a confirmed plan backing it, getting rid of all the old debt, getting rid of all the old problems. That's how plans work. They're negotiated, and they get to a result like this result that provides benefits to creditors, and in this case, tremendous benefits to this debtor. He's getting a discharge. He's getting $8.6 million of debt discharged. He is going to continue to get income for life, substantial income for life, based on the balance of the trust. He is going to get a significant amount of his taxes paid. As this Court may very well be aware, Mr. Carney has tax problems. He's being taxed related to some of his tax decisions, and the settlement is probably the most important thing. Let's talk about the bank properly institution in approving the settlement embodied in the plan. Judge Thuma's findings in support of that were supported by substantial evidence. Judge Thuma's opinion goes into great detail on the underlying facts and circumstances that led to him confirming this plan. The standard of review for approval of a settlement is abuse of discretion. We don't get anywhere close to that in this case. Courts in this circuit have found Judge Kane in two cases that are widely cited, the Bueno case and the Western Pacific Airlines case, that to be an abuse of discretion, it must be grossly unsound, capricious, arbitrary, whimsical, impulsive. Judge Thuma's opinion is the opposite of this. Mr. Walker, can I just ask you for this Court to be in a position to review, even under an abuse of discretion standard, did the bankruptcy court need to make specific findings on the COPEXA factors for that to take place and did it? Well, Your Honor, no. The bankruptcy court had to examine the COPEXA factors, and the bankruptcy court did examine the COPEXA factors carefully. I'd have to turn to that provision, but the bankruptcy court went through the COPEXA factors, in fact, set out a chart, as the Court may be familiar. I mean, the bankruptcy court examined the COPEXA factors over several pages of his opinion, starting on page, I believe, 13 of the decision, but the facts underlying the decision and supporting his analysis on the COPEXA factors is the entire first part of Judge Thuma's opinion, where he articulates all of the facts that preceded the bankruptcy case in state court and the many, many findings of fact that were determined there. Judge Thuma, on page 14, sets out a chart of the COPEXA factors and his findings that support those determinations, that three out of four of the COPEXA factors weigh heavily in favor of the settlement. The only one that didn't, Your Honor, was the possible problems in collecting the judgment, because if a judgment were ever found in favor of Mr. Carney, he probably could collect it, but Judge Thuma went into great detail about, for example, the chance of success of the litigation on the merits. He found that it was worthless or less than worthless. Why? Because Carney had proven his ability to have attorney's fees awarded against him, where he had to pay Villabruzzo's attorney's fees, to have sanctions awarded against him. He proved himself repeatedly to be, frankly, an unworthy plaintiff, a plaintiff that could not substantiate his claims when given the opportunity. Judge Thuma went... I have one question before you run out of time. What's the impact of the state court proceedings? Can we decide this case before the state court, their Absolutely, Your Honor. The state court decision decided the three factors, modified the spend thrift trust to allow... Your Honor, may I exceed my time? Yes, but what if the state court modifies it at their request? Well, Your Honor, the state court has made its decision, and Mr. Carney has appealed that decision to the New Mexico State Court of Appeals, and that appeal is sitting there. The UCC is not a party to that appeal. I don't get direct notices of that, but I've recently looked it up, as recently as yesterday, and that appeal is sitting there, and it hasn't been decided. I realize that. That's why I asked the question, can we decide this case before the state court proceedings are finished because of the possibility that the state trial court could change its mind on their motion? Well, the state trial court is not in a position to change its mind, Your Honor. I respectfully submit the state court of appeals, I guess, could reverse the state district court. There's been no stay. There's a motion pending before the state court based on what they claim is new evidence in a hearing set for next week, as I recall. I'm not familiar with that, Your Honor, and I apologize for that. As I say, I'm not a party to that state court proceeding, and I apologize for not being able to address that. It's quite possible that Mr. Fish could address it if he were permitted. Thank you, judges. Mr. Fish, can you answer that question? You're muted. There you go. There is a hearing on, I think it's next Wednesday. I think the real answer on this is, under the Harbin case with the Ninth Circuit, they said that the right thing for the bankruptcy court to do is to look to see if it's going to be reversed on appeal. And if you say, oh, well, we have to wait for the state court appeals to be can stall a plan of reorganization for years and years simply by filing appeals. And while maybe the court could come down that way, but I suggest that's a really bad way to try to get a bankruptcy system to work. You're allowing somebody to throw a huge monkey wrench into the whole system. There are a number of cases that say that when a plan of reorganization is based on litigation that has not been decided by a court, then the plan is speculative. And that was a problem with Mr. Carney's plan. It was based on litigation he was going to bring, and it's speculative. But once a court has decided, there really are two ways to go. You either say, well, it hasn't been stayed on appeal. It hasn't been reversed on by it. That's a normal rule. What the ninth circuit said is, well, we're not going to do that, but we are going to say bankruptcy court, you have to look to see if it's going to be reversed on appeal. Look at it, review it. Don't decide it yourself, but make a decision of whether there's a likelihood of reversal on appeal. And if it's not likely to be reversed on appeal, go ahead and confirm your plan and go forward with your bankruptcy plan because the creditors need the relief. The debtor needs the relief. The parties need to move forward. Our court of appeals is a couple of years behind on cases. It took two, three years to get a decision. Do we hold everything up for that length of time? The ninth circuit said no. The alternative, I think, is to just say, well, there's a court that's decided it. Until it's reversed, we're going to be bound by it. So I think that's the way I would approach it. Thank you. Thank you, counsel. Ms. Green, we'll go to you for your rebuttal and we will give you extra time because we went over with opposing counsel. So please proceed and we'll be flexible on your time. I appreciate that. Thank you, your honor. As we sit here today, I mean, there is stock in the trust. There is not $3 million and Mr. Kearney does not have $3 million. And so under 541C2, the plan is not funded by property of the estate. If you believe the appellees, 541C2, when you're in an individual chapter 11, has no meaning because what they're saying is they can anticipate and attach those assets. And that's the very definition of a spent thrift trust. Now, all of the examples that appellee's counsel gave you still falls under property of the estate because under 541, with the exception of spent thrift trust assets and the debtor's interest in a spent thrift trust, future revenue, future expected income, future gifts, all of that is property of the estate now. Just because it's contingent, it is future, it is speculative, it is still property of the estate, unlike spent thrift trust distribution that the debtor may get in the future. And that's the case that we have. Now, the state court order does not have a modification of the spent thrift trust. Had the trustees wanted a modification of the spent thrift trust, they would not have asked for it. Instead, they represented to the state court that if you do this, if you allow us to make this distribution, 1115 will be the mechanism by which this becomes property of the estate. That's how it gets to creditors. And you'll see that email from Mr. Fish to Mr. Walker explaining that that's how it becomes property of the estate. He has never made the argument before today that there was a modification of the spent thrift trust. And in fact, the bankruptcy court actually contradicts itself when it says that there is a spent thrift modification. Because in the bankruptcy court order, the bankruptcy court says the trust modifications will prevent future fighting while continuing the goal of providing economic protection for the debtor that the spent thrift provision provides. How can the spent thrift protection protect Kearney if it was modified? The answer is the spent thrift trust provision was not modified and the bankruptcy court actually knew it. Now, I want to briefly address this Rooker-Feldman argument that Apelli's counsel mentioned. And, you know, sort of going a little bit back on what I said earlier, I do think this court is not obligated to accept any findings and conclusions by the bankruptcy court based on the state court's findings where there is an obvious sham. And in this case, we do have an obvious sham. Let's look at the transcript of the proceeding. The trustee's entire case consisted of counsel reading pleadings from the bankruptcy court case and inadmissible deposition and trial testimony from years earlier. It is 50 pages and that's it. And the bankruptcy court also learned along with Kearney during the confirmation process that the trustees failed to disclose their option to purchase the stock that they were going to sell to ARCO right back and they did not disclose at the state court. And what is the trustee's response when we pointed out this disclosure of the option was not relevant to anything before the state court. Now, that's simply not true. Their brazen failure to disclose the option was fraud on the state court. The bankruptcy court and this court certainly is not required to accept the state court's finding which was based on fraud. Please ask yourselves this question. Would any bankruptcy court have allowed a Chapter 7 or a Chapter 11 trustee to withhold relevant details of a transaction for which they I submit that the answer is no. Now, Your Honor, even if you agree that the appellees and the lower court somehow found this loophole to Spendthrift Trust and 541c2, we submit that the confirmation order should still be reversed only if you can get to a reasonable inference of good faith based on a collusive agreement between creditors and trustees of Spendthrift Trust to liquidate the trust so that the trustees can get the assets of the trust using a strawman purchaser and obtain comprehensive releases and so that creditors can obtain a portion of the proceeds of the liquidation should this plan be upheld. Good faith under the bankruptcy code requires that a plan fairly achieve a result consistent with the objectives and purposes of the bankruptcy code. So only if this collusive agreement between the UCC and the trust trustees can be considered designed to fairly achieve a result consistent with the code when we have 541c2 that explicitly excludes the Spendthrift Trust from property of the estate should we lose this case. And I want to leave you with one final thought and this is going off of something that appellees counsel said. So the trustees and the lower courts have both argued now that it would be unfair to deny confirmation of the UCC plan and allow Kearney to keep his interest in the trust while creditors receive only Kearney's non-durable commitment to pay them back. That position, however, is a frontal assault on the nature of Spendthrift Trust. That position has been soundly rejected by the Supreme Court. The Supreme Court in Law v. Siegel unequivocally held that bankruptcy courts lack the authority to circumvent the result required by the bankruptcy code. Here the bankruptcy code sections 541c2 and 1129a3 require that the UCC plan be denied confirmation. They have used bad faith to abuse the bankruptcy process and that should not be allowed. Thank you, your honors. Counsel, could I just ask you to respond to the the issue that Judge Seymour raised which has to do with whether the proceedings in the New Mexico appellate process should be allowed to be completed before this court addresses this appeal? You know, what's your position on that? I think the court can decide that now. I think the court has evidence before it of an obvious sham in the state court. I don't know how long it's going to take for the state court to decide that issue. We have a pending motion to open the evidence and reconsider the findings and conclusions. Even if we lose that motion, the appeal is still pending. I don't know how long that appeal is going to take, but I think the court has ample evidence before it that there is a sham in the state court. That sham may continue. Thank you, your honors. Thank you, counsel. Thanks to all of you for the arguments this morning. We will consider the case submitted and counsel are excused.